Good afternoon, your honors. I'm Tom DeFranco, appearing on behalf of Appellant Defendant Terrance DeAndre Dennis. And just to provide you with a brief roadmap, there are two major issues that we would like to discuss with the court this afternoon. The first is what we believe to be the district court's clear error in its decision on Mr. Dennis's motion pursuant to Batson v. Kentucky. And the second is a sufficiency of the evidence argument. And your honors, we would specifically like to focus on counts one and three, which are the conspiracy count and the firearm possession in furtherance of a drug offense count. But moving into a discussion of the Batson issue, we believe that, you know, unfortunately, the district court's analysis of the Batson question was somewhat muddled, but there were several clear errors of law made by the district court judge. The first being a reflection that there is that he was aware of no basis of law upon which to make a determination based on the racial composition of the jury, which is in direct contravention of this court's ruling in the U.S. v. Joe, which indicates quite clearly that the racial composition of the jury is, in fact, a factor that may be considered by the district court in making the Batson determination. Now, I'm not saying that this fact was directly before the district court, but it's worth mentioning to your honors that the city of Newport News for the last U.S. census is 41 percent African American and approximately 10 percent Hispanic. It's a minority white community. And yet, as a result, as a but for result of the government's strike of a juror of a cognizable racial minority group, the government was able to effectively engineer an all-white jury. The second clear error of law was the district court's focus. Can I stop you there and make sure I understand two points? Did you provide, and I don't mean you personally, but whoever represented him, any argument or support for the, you know, what you cite as U.S. v. Joe, that the racial composition should be considered as a factor? No, your honor, that's a fair point. There was some back and forth. And so, and I just want to make sure I understand. And then the second point, just in understanding the arguments you're making, you said that his strike of the woman, which I understand from the transcript have been his first strike, was the but for cause. But wouldn't after he struck that woman, you struck two minorities after that fact? And so, can we really say that it was the but for cause, given that it came first? Well, it's a fair point, your honor. And perhaps I would only add that we did not strike two minority members of the veneer, but our co-counsel, I'm sorry, our co-defendant's counsel made the strike. But your point is well taken. There were two strikes of members of a cognizable minority group by defendant guess's counsel. That said, I don't think that has any bearing on what the court's view of the Batten issue should be, given the clear Supreme Court precedent that even, you know, even one strike for a racially impermissible, racially motivated reason against a member of a cognizable minority group is too many and enough to sustain a Batson challenge. Why can you, but can you tell me why the reason given by the government was not a racially neutral explanation? Yes, absolutely, Judge Floyd. And I think that the problem. So first, let me say, it was a race neutral reason. Our argument is that it was pretextual. And that was an argument made by counsel for Mr. Dennis to the district court. Now, the government responded, of course, by offering a characteristic that it argued distinguished the white social worker from the Hispanic social worker who was struck by arguing that, well, she was the victim of a high speed chase. And this is a case that involved a high speed flight from the police. But I think what's problematic in this case is that the district court engaged in no comparative analysis of the word or deer. And when you look at the questioning of the white juror, I'm sorry, again, I mean, you're you're again, you're blaming the district court judge. Did you or your colleague present any comparative analysis to the court? I mean, we typically think of district courts as addressing arguments that are made by counsel, not that the district court was required to go do work that you didn't argue. And I didn't I didn't see any comparative juror analysis put forward by you or your your co counsel. Well, I'm fair enough, Your Honor, and you're correct that there was well, so I will back up and say that counsel below did make the point that a what did not only did the government not strike a white social worker, but actually argued against a motion to strike for cause. I would not characterize counsel below as going quite as far as I'm going here today and pointing out that, in fact, juror number 32 was not even asked by the government about her status as a social worker and how that might impact her ability to is fundamentally problematic. And both the Supreme Court and sister courts of this court have acknowledged the fact that both one comparative juror comparative analysis of word here by the court is a useful mechanism to examine whether pretext exists in a racially neutral justification that is offered by the government in support of a strike. And two, that the lack of questioning on an issue that the government identifies as a but for cause for its strike is evidence of pretext. And that's what we had here. The government lawyer below offered a quite detailed explanation to the court as to why he was troubled by the Hispanic jurors employment status as a social worker. He explained that his daughter was employed in the profession and that in his personal experience, social workers tended to favor individuals at the defendant's socioeconomic position. And yet, in spite of those strong feelings, when given an opportunity to question juror number 32, the attorney for the government did not ask a single question as to how her profession might bear on her ability to fairly judge the trial. If this was an issue that he was truly as motivated about as he expressed to the court, we would expect at least some probing as to how this juror might be able to adequately serve rather than just a immediate conclusion that, oh, well, because she was in a car accident, it doesn't matter anymore that she was a social worker. That really, it doesn't follow. And so, I'd like to point to one other, what we view to be clear error of law by the district court on this Batson issue, which is its focus to the exclusion of all else, seemingly, on the fact that the government used only a certain percentage of its strikes on a member of a racially cognizable minority group, which is in direct contravention to jurisprudence on Batson, both within this court and the Supreme Court. It really should not matter to the district analysis that the government struck one white veneer person and thus only used 50% of its strikes when engaged in war gear. And finally, I would just note one other factor that troubled us was a comment by the district court that, you know, sort of left the impression that the district at Joint Appendix 134, the district court says, I'll just say it. I think that they may not believe that that was the intention, but out of an abundance of caution, felt they needed to make the motion. And that sort of... So, let me ask that question. That's a good question because, you know, if we were reviewing that factual statement for, you know, clear error, you know, Mr. Dennis's lawyer says, you know, with respect to the prosecutor, I don't think you're discriminating. I personally don't think you're discriminating, right, at J135. I mean, the defense lawyer says that, right? So, if the judge then turns around and says, you know, it doesn't seem like this is anything other than, you know, exactly what the district court said. I mean, I don't know that that matters, but seems consistent with the record to me. Well, I mean, I apologize, Your Honor. I don't have the ability to scrutinize J135 as much as I would like to in answer to your question, but... Or 126, where he says, well, I'm a sort of Batson motion. I feel like I'm doing something. I mean, you know, I'm not sure why this matters, but to the extent that that's your consternation, I'm not sure that that's a mischaracterization of the way counsel themselves presented it, no? Well, so, Your Honor, I believe you're quoting the attorney for Mr. Guess, who in fact did not make the Batson motion, who said the, I'm sort of making a sort of Batson motion, and then referred to the fact that he was troubled with the racial composition of the jury without clearly making a motion. Though I may be misremembering the record. So, but, and I apologize for that. I will review it and come back to you on rebuttal. But with that said, and if there are no more questions on the Batson issue, I'd like to move on to discuss the sufficiency argument. And moving first to count one, we believe there is a lack of sufficient evidence presented by the government to show that Mr. Dennis and Mr. Guess were engaged in a conspiracy, specifically that Mr. Dennis had any knowledge of the conspiracy before the facts at issue took place. The government basically presented two critical pieces of evidence on this point, that Mr. Dennis was observed in a parking lot with Mr. Guess, interacting with a car that was being surveilled for suspected drug activity, and then that Mr. Dennis was observed by a police officer throwing a bag of heroin and a firearm from Mr. Guess's car while in flight from the police. There is absolutely no evidence presented to the jury below that goes to the question of Mr. Dennis or Mr. Guess's relationship, any sort of agreement that they might have had before, you know, to acquire and distribute narcotics. The record is really barren at this point. And it's worth pointing out that the government had ample opportunity to develop such a case. They in fact seized cell phones from both Mr. Guess and Mr. Dennis and had ample opportunity to return to the parking lot in question to take witness testimony and gain security camera footage, and in fact did not attempt to do so until months after the arrests of both defendants when witnesses didn't remember seeing them and the security camera footage in question wasn't available because it had been deleted approximately a month after or the supposition was that it had been deleted. Mr. DeFranco, if we credit the officer's testimony that it was Mr. Dennis who in fact threw the bag of heroin and the weapon outside of the car, if we accept that to be factually sufficient, is it your argument that that is not enough evidence of a concert of actions that would judge Diaz, but I don't think it's enough on count one to establish that Mr. Dennis knew of the conspiracy before he participated in it. I think that there was ample cause for reasonable doubt before the jury based on the lack of evidence that was presented to them on the relationship between Mr. Dennis and Mr. Guess and exactly what went on in that car prior to the you know, I certainly understand that it's the government's position that the discarding the evidence in combination with Mr. Guess's flight from the police is enough as you suggested. If there are no more questions on the conspiracy count, I'd like very briefly to discuss count three and here the fatal flaw in the government's case is, you know, all they have presented is evidence that a firearm was discarded from the vehicle shortly after or in short proximity to a bag of heroin being discarded from the vehicle. There's no evidence actually presented that the firearm was used to facilitate a drug crime. None of the witnesses presented by the government who saw Mr. Dennis interacting with P, the individual being surveilled in the parking lot, witnessed Mr. Dennis using a firearm and there's no evidence presented about the proximity of the firearm to the gun while it was within the and I see that my time is up. So unless there are any further questions, I will come back on rebuttal. Thank you. All right. Thank you, Mr. DeFranco. Mr. Ossoff, do I have that right? Yes, Judge. Mr. Ossoff, thank you. You may proceed. Your Honors, may it please the court, Peter Ossoff on behalf of the United States. I'll first address the Batson issues and to be fair, this is no fault of Mr. DeFranco or even Mr. Bryant to offer to brief for the appellant, but this is clearly an issue where the lack of firsthand knowledge being in the trial court has led to some misstatements of facts here. First, the jury was not all white. There were minorities on the jury. Second, as Judge Richardson, as you already addressed, the but-for argument must fail in the sense that the government wasn't the sole reason that there were no African-Americans on the jury. Can you go back to the first point and point me to where in the JA I can find that the jury was not all white? Understandably, Your Honor, I don't know that there is a point I can point in the JA for that. Because during it, or maybe just help me understand, because the defense lawyers seem to suggest that it's all white before they make the Batson motion, and I guess that itself is not a fact that I can rely on because it's just a representation, but I mean, I understand you were there and you saw it, but I need something other than that. Why should I find ambiguity on that point? I understand that your point, Your Honor, but again, I unfortunately can't point you to a place that it affirmatively says in the JA that there are other minorities on the panel that was selected. But there's also nowhere that it says there aren't. I know that's a horrible answer to your question, but the fact remains that every step of this issue was initiated by the hyper judge Davis. If you read the JA, as soon as the jury was called and roll was taken, there was a brief pause, and Chief Judge Davis asked counsel to approach. The whole thing was initiated by the district court and asked Mr. Matthews if he was satisfied, Ms. Connor, if she's satisfied, and my co-counsel, Mr. Slotnick, if he was satisfied, and then began a kind of pseudo Batson analysis before a motion was even made just because of the fact that there were no African Americans seated on the jury, which the government, again, there's no denying that, but that's not a basis for a Batson motion. The JA reflects that Chief Judge Davis goes on to repeatedly say that there's no prima facie case here. Mr. Slotnick, my co-counsel, went to step two anyway and offered a race-neutral explanation to which the defense had no reason to point to that it was pretextual. The argument, this gets to my third point of factual misrepresentation that, again, I'd like you to look at JA 71 through 75. That's the best place I can show to prove this point, Your Honor, is that the jury voir dire procedure, there was no opportunity for the government to ask juror number 32 any questions. The way procedurally the voir dire proceeded was that Chief Judge Davis asked a certain amount of agreed-upon questions. Any juror who raised their from the gallery or come up to the bench and speak in private. Juror number 32 made no such affirmative answers and was therefore not subject to any additional voir dire. Did the other social worker that Ms. Conner had pointed to as a pretextual, or in reference to her pretextual argument, did answer affirmatively that she had been a party to a witness or a victim in a crime, and that crime, as Mr. DeFranco pointed out, was a similar fact pattern that we saw in this case. So Mr. Zlotnick articulated that he thought that outweighed the fact that she was a social worker, and I believe JA 132, Mr. Zlotnick said, if I had other information, referring to juror number 32, if it had only been the fact that she was a social worker, not the other aspect of it, I would have certainly made that challenge. He admitted that he would have struck the other social worker as well, but for the fact that she had been a party to a similar fact pattern situation, and he had taken the time to rehabilitate her and make sure that that wouldn't make her be an impartial or just juror. Would she answer affirmatively, and there was no further challenges at that point. Those are the three main factional discrepancies with Appellant's arguments regarding the Batson issue, and again, Chief Judge Davis was extremely cautious, and at every point, all three prongs of this test fail, and therefore there's certainly no clear error on the court's ruling. As for the sufficiency of the facts at issue, Your Honor, in 1996, this court in the United States v. Burgos firmly established that conspiracy by its very nature is clandestine and covert, thereby frequently resulting in little direct evidence, and therefore circumstantial evidence can be wholly provable evidence for a conspiracy. Burgos and its progeny, up to and including this court's published opinion as recently as June 22nd of this year in United States v. Moody, have continued to hold that the fact that a conspiracy is loosely knit, haphazard, or ill-conceived does not render it any less a conspiracy or any less unlawful. The Supreme Court has admonished that a reviewing court not examine evidence in a piecemeal fashion, but consider it in a cumulative context. In this court, Your Honors, this court may not, it may not overturn a substantially supported verdict merely because it finds the verdict unpalatable or determined that another reasonable verdict would have been preferable. The jury verdict must be sustained if there is substantial evidence taken in the view most favorable to the inferences were made here from a string of facts that I would argue are far more than were seen in the Moody case where this court reluctantly but correctly held and I think established a baseline for what constitutes a criminal conspiracy. Great deference is given to trial verdicts for good reason, Your Honors. A jury is in a far better position to review and from a cold record and to take as much time as needed to deliberate, ask questions, and deduce reasonable inferences from all the evidence presented at trial, which a jury did in this case in spades. They deliberated, they asked questions, and to that point, Your Honor, they did not, they acquitted Mr. Guess of the firearm charges. So this was not a rubber-stamped quick, they must be guilty type verdict. It was deliberate, it was careful, and it was proper. Your Honors, I thank you for your time and service and I'm happy to field any additional questions that you may have. Otherwise, the U.S. stands on its brief and I respectfully ask the court to affirm the convictions in this case. All right. Thank you, Mr. Ossoff. Mr. DeFranco, you've got some time for rebuttal. Thank you, Your Honor. And I guess let me first address Mr. Ossoff's point about the composition of the jury. If I've made any factual misstatement, obviously that's on me and I apologize. That was, my representations were made in both reliance on the record and in consultation with some of my colleagues. I'm not here to contravene anything Mr. Ossoff, who was at trial, has said about the composition of the jury. So I apologize for that. That said, whether or not the jury was all white, I think the record does clearly establish that it was a jury with a racial composition that could have been taken into consideration by the court. And so we stand on our argument that the court committed clear error by failing to acknowledge that racial composition of the jury was in fact a factor that could have been considered in reviewing the Batson charge. Mr. Ossoff then argued that the government wasn't the sole reason for an all-white jury, which I think we addressed earlier. I don't think that really has any bearing on the Batson analysis. If the court finds that the government did in fact use a strike for an impermissible racially motivated reason, the fact that defense counsel also struck members of a cognizable racial minority group is of no moment to the Batson analysis. Third, Mr. Ossoff focused on the fact that the district court found that there was no prima facie showing under Batson, but as I think we briefed, that really doesn't matter at this stage because it is the jurisprudence of the Fourth Circuit that once the district court goes beyond the prima facie stage and gives the government an opportunity to provide a race neutral justification for its strike, a determination on Batson at the appellate level will not be predicated on whether or not there was a prima facie showing. So your decision on this issue should not be based on the district court's finding with regard to whether or not there was a prima facie case. Fourth, and finally, in response to the questioning of jurors, certainly Mr. Ossoff characterized this as a misstatement of fact. I respectfully disagree with him. I think what our papers say is simply that there was no questioning of the Hispanic juror on the issue of her status as a social worker, which is true, as he said in his argument. And what we really seized on was the fact that there was an opportunity to question this white juror, and as he said, an opportunity to rehabilitate her as a witness. And yet, in that questioning, no questions were asked with regard to how her employment as a social worker might bear on her ability to serve as a member of the veneer. And that is what is troubling. So it's fair to say neither juror was asked about social work? Yes, fair to say, Your Honor. And I'd just like to go to, I have had an opportunity to look at the joint appendix, Your Honor, and I believe that the quote you pulled from page 126 was, in fact, from counsel for Mr. Guess, who did not make the Batson motion. That was made by Mr. Dennis. I believe he joined in it at some point. And then at JA 135, I think the quote is, from Mr. Conner, is that she has nothing against Mr. Zlotnick personally. I didn't see, I was reading quickly, but I didn't see her say, I don't think, I'm paraphrasing, Your Honor, but I didn't see her say, I don't think that you engaged in a strike with a racially impermissible motivation. Moving quickly to the sufficiency argument, I'd like to briefly discuss the Moody decision, which Mr. Osip discussed. And I think that that decision is distinguishable from the current set of facts. What was critical to the court Moody was the fact that the government actually had introduced some limited evidence regarding the relationship between the two co-defendants in that case. In fact, the court emphasized that it was troubled by the lack of evidence presented establishing any kind of connection between the two defendants, but that there was some testimony on the fact that one defendant had referred to the other as, quote, my girl, and that that was enough to establish some preexisting relationship before the drugs, guns, and money had been acquired during, in that fact pattern. We don't have any kind of evidence in this case relating to Mr. Gess and Dennis. And with that, I see my time has expired. So I respectfully ask the court reverse the district court's Rule 29 motion or in the alternative grant Mr. Gess a new trial on the Batson issue. And thank you all for your time. Thank you, Mr. DeFranco and Mr. Osip, both for your arguments here this afternoon. We certainly appreciate them both. And as I indicated to your colleagues earlier this afternoon, we would typically come down from the bench and greet you personally. We can't do that obviously, but hope to do that again soon. Until then, thanks again for your arguments and we will adjourn court. Sani Da. Thank you all. Thank you. This honorable court stands adjourned. Sani Da. God save the United States and this honorable court.
judges: Albert Diaz, Henry F. Floyd, Julius N. Richardson